## FROHLICH *v.* INDEPENDENT GLASS CO.

1. SALES—BREACH OF CONTRACT—EXCUSES.

   In an action for breach of a contract, defendant was not entitled to show, as an excuse for not shipping goods ordered, pursuant to agreement, that plaintiff had neglected or refused to pay an old account, as tending to prove a fraudulent attempt to secure the goods without any intention to pay for them; where its refusal to perform was not based on such a reason and no testimony excluded had any tendency to show that such was the true reason for refusing to perform.

2. SAME—DAMAGES.

   Prejudicial error did not appear from the charge of the court to the effect that plaintiff was not required, in mitigation of damages, to buy of any manufacturer not known to him in the ordinary course of his business, under undisputed testimony that there was only one concern of sufficient capacity that would fill his order at the time, and he purchased the goods of it.

Error to Wayne; Rohnert, J. Submitted November 18, 1912. ( Docket No. 104.) Decided December 17, 1912.

Assumpsit by Simon Frohlich against the Independent Glass Company for breach of contract. After plaintiff's decease, Edward Frohlich and Hannah Frohlich, his executors, were substituted as plaintiffs. Judgment for plaintiff. Defendant brings error. Affirmed.

*Julian G. Dickinson,* for appellant.

*Lucking, Emmons & Helfman,* for appellees.

OSTRANDER, J. Plaintiff sued defendant for damages arising out of the failure of defendant to fill an order for glass according to contract. Upon a former trial, plaintiff recovered a sum less than he demanded. The judgment was reversed by this court. *Frohlich* v. *Glass Co.,*

144 Mich. 278 (107 N. W. 889). Simon Frohlich, the original plaintiff, died, and the suit was revived in the name of his executors. Upon the last trial, the record of which is now before us for review, plaintiffs recovered a much larger verdict and judgment, and defendant alleges errors. The opinion of this court upon the former hearing contains a sufficient statement of the issues. With a single exception, to be hereafter noticed, no new issues have been introduced into the case and no questions of law not considered and disposed of in our former opinion. We then held that the reason which defendant gave for its failure to perform its contract was insufficient. It is objected that the trial court refused to admit in evidence the correspondence in which the reason was contained and other correspondence between the parties. The correspondence was that offered and received upon the former trial, is contained in the record, and has been examined. The reason given for not filling plaintiff's orders was "simply and solely because you refuse to pay the overdue account owed by your Detroit and Toledo houses to this company." In the former opinion it was said that "nothing short of a breach of contract or actual insolvency would excuse the defendant from fulfilling the contract on its part." Neither of these things was attempted to be shown, and no testimony tending to prove it was excluded.

It is contended that the correspondence and the interrupted cross-examination of plaintiff's assignor tended to prove, and should have been admitted to prove, that it was justified in refusing to deliver the glass, and that a claim of rebate made by plaintiff and his course of dealing indicated the fraudulent purpose to procure the glass and to pay neither for it nor for glass furnished on old account; that at least it justified defendant in refusing to perform its contract unless plaintiff would pay existing indebtedness. We shall assume, as is contended in behalf of appellant, that if the glass had been delivered, and it had then been ascertained that it was purchased with an intention to never pay for it and to defraud defendant, the con-

tract might have been upon that ground rescinded and possession of the glass recovered. But no such reason was given for refusing to perform the contract, and the excluded testimony does not tend to prove that it was the real reason for such refusal. We adhere to our former rulings, and, without particularly stating the errors assigned upon this record, find them disposed of by the prior decision.

The single exception, heretofore noted, is a point raised upon that portion of the charge of the court:

"If somebody of whom he (Frohlich) had no knowledge or of whom he would not know or be acquainted in the ordinary course of his business or in the ordinary course of getting glass for his business, if such a person had glass, the price at which that person would sell it would not establish the market price for him. It would be established by the usual sources from which he had been accustomed to go out and get glass."

It is said of this, among other things:

"There are no legal restrictions of evidence as to the market value to the plaintiff's usual sources of supply. * * * The evidence from any source of supply as to the market value of such glass applicable under the evidence to the time and place of delivery was admissible in evidence to establish the true market value of the glass."

As it is stated the position of counsel for appellant is undoubtedly a proper one.

The portion of the charge which is quoted must be read in connection with its context and considered with reference to the testimony. The court said:

"What any one else would have had to pay in open market to buy that glass. The market value is to be ascertained by the conditions and facts and circumstances which surround the buyer in his attempt to buy glass in the open market at that time. It is your duty to take into consideration what sources of supply were open to the plaintiff on that day and the knowledge which the plaintiff had as to such sources of supply, the prices which the plaintiff would be compelled to pay for the same, and all

other facts and circumstances which would affect the purchase of such on the market on this day. It is not the duty of the plaintiff in attempting to buy glass to find every possible person who might sell it, but he is bound to go to those places which are sources of supply for people in buying glass like himself, or such as he had been accustomed to go to get glass from. In determining what is the source from which he could buy glass or what anybody could go out and buy it for in the open market. In other words, I charge you, gentlemen of the jury, that if somebody of whom he had no knowledge or whom he would not know or be acquainted in the ordinary course of business or in the ordinary course of getting glass for his business, if such a person had glass, the price at which that person would sell it would not establish the market price for him. It would be established by the usual sources from which he had been accustomed to go out and get glass, from which it would be expected that he would go out and get glass."

The distinction which the court made was dictated by the testimony which was before the jury. Plaintiff used a large quantity of glass; he gave to defendant a large order. The testimony, and it does not appear to be disputed, tended to prove that the output of glass was practically controlled by three concerns—combinations—namely, defendant, the American Window Glass Company, and the Federation. There were some outside factories, having a limited production, but none which could have filled plaintiff's order for 15,000 boxes of assorted sizes and different qualities of glass. The combinations controlled the market and the price. They let their fires go down in June and again begin production in September or October. The Federation had oversold its product, the defendant would not sell to plaintiff, and it, too, had oversold its product. The American Window Glass Company sold to plaintiff some glass in July. Other dealers who bought from it paid the same price that plaintiff paid. The charge might well have been more specific; but, in view of the testimony to which reference has been made, we are of opinion that the jury could not have

failed to appreciate the reason for the distinction stated and the effect to be given to the instruction.

We are not satisfied that reversible error was committed, and therefore affirm the judgment.

MOORE, C. J., and STEERE, MCALVAY, BROOKE, KUHN, STONE, and BIRD, JJ. concurred.